THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY W. LOFTON, Defendant-Appellant.

Second District    No. 2—97—0398

Opinion filed March 16, 1999.

G. Joseph Weller and Kim D. Campbell, both of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles (Martin P. Moltz and Richard S. London, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Jerome P. Genova, of Calumet City, for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant appeals from his convictions of two counts of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1(a)(1) (West 1996)). We reverse and remand.

Defendant was tried before a jury for allegedly placing his finger in and on the vagina of M.D.H., who was at the time five years old. The jury returned findings of guilty on both counts, and the court imposed consecutive sentences of 18 and 12 years in the Department of Corrections on the two counts. Defendant's motion for a new trial was denied. This appeal followed.

We will first address defendant's contention that he was not proved guilty beyond a reasonable doubt of predatory criminal sexual assault.

M.D.H., age six, testified that her mother's friend Anthony sometimes stayed overnight at her house. One night, she woke up from a nightmare and saw Anthony sneaking up on her from her bedroom door to the closet to under her bed. Anthony then sat on the side of her bed and touched her with his finger on her "cookie." M.D.H. said that she used the terms "cookie" and "gina," but never "kitty cat," for her vagina. M.D.H. tried to call her mother and tell Anthony to stop, but Anthony had his hand over her mouth. Anthony told her not to tell anyone what happened, then left the room. M.D.H.

did not see Anthony the next morning and did not immediately tell her mother what happened. M.D.H. also noticed a small spot of blood on her sheet the morning after the incident. At the end of her testimony, after viewing everyone in the courtroom, she was unable to identify defendant as Anthony.

David Berg, a police officer, and Kathryn Byrne, an investigator for the Department of Children and Family Services, testified regarding an interview in which M.D.H. stated that Anthony had messed with her "kitty cat," touching her inside her vagina with his index finger. David Berg also testified that he spoke with defendant, who stated that he knew M.D.H. and her mother and had had sex with M.D.H.'s mother at least twice but denied having abused M.D.H. Tina Lesniak, a registered nurse, testified that M.D.H. told her that Anthony put his finger in her "cookie." Lesniak also testified that M.D.H.'s vulva was slightly reddened but exhibited no other signs of trauma.

Wanda H., M.D.H.'s mother, testified that M.D.H. told her that Anthony snuck from the bathroom into her room, into her closet, then under her bed, put one hand over her mouth, stuck his fingers inside her "cookie," and moved them around. M.D.H. told Wanda that Anthony threatened to hurt her, Wanda, and Wanda's unborn child if she said anything about the incident. Wanda also testified that she and defendant drank "quite a bit" of alcohol, smoked four marijuana cigarettes, and had sexual intercourse four or five times "until the wee hours of the morning" on the night that defendant allegedly molested M.D.H. Defendant left the apartment before M.D.H. woke up. That morning, M.D.H. was quieter than usual and would not eat her favorite breakfast. M.D.H. also dunked her pajamas in the toilet, spread feces on the bathroom wall, and colored the bedroom wall with crayons. That night, M.D.H. had nightmares and woke up crying and screaming. It was not until the following day that M.D.H. told her mother that Anthony touched her "cookie"; M.D.H. had previously not answered when Wanda asked if anyone had touched her "cookie." Wanda called the police that day but said she called at 6 a.m. on a Saturday before September 7, not 1:20 p.m. She denied telling police that the incident occurred a week prior. Wanda admitted that she requested a letter from the State's Attorney's office assuring her that the State would not attempt to remove her children.

Dr. Francis McCormack testified that he gave M.D.H. a complete physical examination and noticed a reddening and slight swelling of the external genitalia, but the entry of the vagina appeared normal. He observed no lacerations, bruising, or swelling. McCormack diagnosed M.D.H. as having a urinary tract infection. He also testified that M.D.H. told him that "[h]e put his finger in my cookie."

Dr. Julia DeBellis testified as an expert in pediatrics. Her examination of M.D.H. found no scarring or bruising of the vagina and neither confirmed nor eliminated the possibility of sexual abuse.

The only witness on defendant's behalf was Officer Joanne Demmin of the Elgin police department, who testified that she was sent to Wanda's apartment at approximately 1:20 p.m. on Saturday, September 7, regarding an incident that had occurred a week prior to that date. She spoke to Wanda but not to M.D.H.

■ ■ The standard of review on a challenge to the sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Wych*, 248 Ill. App. 3d 818, 823 (1993). We are not allowed to substitute our judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses. *Wych*, 248 Ill. App. 3d at 823. We will not overturn a conviction on appeal unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Van Brocklin*, 293 Ill. App. 3d 156, 165 (1997). Our review of the evidence in the light most favorable to the prosecution leads us to conclude that defendant was proved guilty beyond a reasonable doubt. Although M.D.H. was unable to identify defendant in court, she consistently said in out-of-court statements and in her testimony that her mother's friend Anthony touched her vagina. Defendant's name is Anthony, and he stayed overnight in the same apartment with M.D.H. on several occasions, including the night of the occurrence. While there are discrepancies in the terms M.D.H. used in various accounts to describe her vagina and the extent to which her vagina was touched, her statements that Anthony touched her vagina remain consistent. Furthermore, while the medical examinations of M.D.H.'s vagina found no scarring, bruising or lacerations, redness and swelling were detected. Tests for evidence of sexual abuse were inconclusive. The jury was in the better position to observe the witnesses as they testified and to weigh the evidence, which was not so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. See *Wych*, 248 Ill. App. 3d 824. We will not reverse defendant's convictions on this basis.

Defendant next contends that his rights to due process, a fair trial, and to confront witnesses against him were violated by the method the court used to present the testimony of M.D.H. The State requested that M.D.H. be allowed to testify via closed-circuit television and presented two witnesses in support of its request. Wanda H. testified that M.D.H. was afraid of defendant and did not want to see him.

Rae Bramel, sexual assault coordinator at the Elgin Community Crisis Center, testified that M.D.H. would appear frightened when defendant's name was mentioned. The court found that there was no evidence that testifying in front of the jury would have an adverse effect on M.D.H. and denied the State's motion. However, the court did order that M.D.H. would testify with her back to defendant, separated from defendant by several podiums so that she would not have to see him. Defense counsel was allowed to move about during M.D.H.'s testimony, but defendant could not see M.D.H. during her testimony. At the conclusion of her direct examination, M.D.H. was asked by the State to look at all the people in the courtroom and identify Anthony. She looked but was unable to identify defendant as Anthony.

■ A defendant does not have an absolute right to a face-to-face meeting with witnesses against him at trial. See *Van Brocklin*, 293 Ill. App. 3d at 167. This court found that the Child Shield Act (the Act) (725 ILCS 5/106B—5 (West 1996)) satisfied the confrontation clause of the sixth amendment to the United States Constitution (U.S. Const., amend. VI) in *Van Brocklin*. Under the Act, a child victim may, in the prosecution of certain sexual crimes, including predatory criminal sexual assault, testify at trial via closed-circuit television if the court determines that courtroom testimony will result in the child's suffering such serious emotional distress that the child cannot reasonably communicate or that the child will suffer severe emotional distress that is likely to cause the child to suffer severe adverse effects. 725 ILCS 5/106B—5(a)(2) (West 1996)). The Act in no way provides for a courtroom setup designed to keep a witness from seeing the defendant because the witness may be afraid of the defendant.

■ In this case, the court made no findings that would bring the testimony of M.D.H. under the Act and, therefore, did not use the statutory closed-circuit television for her testimony. However, the setup that the court did order had no basis in law and was violative of defendant's right to confrontation. The legislature has provided a specific remedy for use in cases where specific findings regarding the welfare of the child witness are made. The procedures of the Act have been found to pass constitutional muster. However, this does not mean that any other procedures fashioned by a court for reasons other than those stated in the Act are appropriate. Furthermore, the State undercut its argument that such measures were necessary to protect the child when it had M.D.H. stand up and search the courtroom in an effort to identify defendant as the perpetrator of the offense, which M.D.H. did not do. If M.D.H. needed to be protected from seeing defendant, why did the State make her stand up and try to point to him? The trial court itself was concerned about this, stating, "the confronta-

tion I thought we were trying to avoid was called for. Had I known that, I doubt I would have made these arrangements, but what's done is done, and the record beyond that will speak for itself." Also very telling was the fact that M.D.H. was unable to identify defendant when requested. It is difficult to conceive how a child who does not recognize a person can be traumatized by seeing that person. The detriment to defendant's right to confront witnesses and to not be placed in a bad light as a disturbing or intimidating party was not properly balanced by the isolation of the minor witness from a person she did not recognize.

The court's actions had no constitutional or statutory basis, and their supposed benefit to the victim was undermined by the State's actions. Apparently the State believes it has a superior right to traumatize a minor witness to obtain an in-court identification while the defendant's right to witness the testimony is inferior thereto. This procedure violated defendant's right to confront witnesses against him. Therefore, his convictions must be reversed, and the cause must be remanded for further proceedings.

■ ■ Defendant next contends that one of his convictions must be vacated because he was convicted of more than one offense arising out of the same physical act. This issue is now moot, as we have reversed both convictions and remanded the cause for a new trial. However, in the interests of judicial economy, we must point out to the court and to the State that count II, as currently constituted, fails to allege facts sufficient for a charge of predatory criminal sexual assault of a child. Both counts were charged as violations of section 12—14.1(a)(1) of the Criminal Code of 1961 (the Code), which provides:

"(a) The accused commits predatory criminal sexual assault of a child if:

(1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed[.]" 720 ILCS 5/12—14.1(a)(1) (West 1996).

Sexual penetration is defined as follows:

"[A]ny contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration." 720 ILCS 5/12—12(f) (West 1996).

Count II alleged that defendant violated section 12—14.1(a)(1) by placing "his finger *on* the vagina of M.D.H." (Emphasis added.) In *People v. Garrett*, 281 Ill. App. 3d 535 (1996), the appellate court found

a touching of the anus on the outside by a finger was insufficient to support a conviction of criminal sexual assault based on anal penetration. Similarly, in the case before us, we conclude that placing a finger *on* the vagina is not an act of sexual penetration as defined in section 12—12(f) of the Code. Therefore, count II fails to properly charge predatory criminal sexual assault of a child because it fails to allege an act of sexual penetration.

Defendant next contends that he was denied a fair trial by cumulative and repetitive statements allowed by the court pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10 (West 1996)). We disagree.

■ Section 115—10 allows, among other things, a hearsay exception for out-of-court statements made by a child under 13 years of age complaining of sexual abuse or describing any detail or act that is an element of the alleged sexual offense. See 725 ILCS 5/115—10 (West 1996). Such statements may be allowed if, after a hearing, the court finds that the statements are sufficiently reliable and the child testifies at trial. 725 ILCS 5/115—10(b)(1), (b)(2)(A) (West 1996).

■ In the case before us, the court allowed section 115—10 statements by David Berg, Kathryn Byrne, Tina Lesniak, and Wanda H. Defendant argues that the testimony of the witnesses regarding M.D.H.'s statements was cumulative and served only to bolster M.D.H.'s credibility by sheer repetition. However, section 115—10 contains no limitations on the number of witnesses who may testify under its strictures. *People v. Branch*, 158 Ill. App. 3d 338, 340-41 (1987). Witnesses who are close to a child victim or have interviewed the victim should not be curtailed from testifying and aiding the victim simply because of their numbers. *Branch*, 158 Ill. App. 3d at 341. Applying the test of an abuse of discretion, we do not believe the trial court abused its discretion. The four witnesses testified about three separate statements given in different places, to different people, under different circumstances. Only Berg and Byrne testified to the same statement. The court found that each statement provided sufficient safeguards of reliability to allow them as testimony.

■ Defendant finally raises one issue regarding truth in sentencing as it affects his sentence. However, as we are reversing the judgment and remanding this cause, this issue is moot.

For these reasons, the judgment of the circuit court of Kane County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

INGLIS and HUTCHINSON, JJ., concur.