(No. 87382.—
(No. 87434.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANTHONY W. LOFTON, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RICHARD STEWART, Appellee.

*Opinion filed November 22, 2000.*

James E. Ryan, Attorney General, of Springfield, and David R. Akemann, State's Attorney, of St. Charles (Joel D. Bertocchi, Solicitor General, William L. Browers and Jay Paul Hoffmann, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Martin P. Moltz, and Gregory L. Slovacek, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Darren E. Miller, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

James E. Ryan, Attorney General, of Springfield, and John C. Piland, State's Attorney, of Urbana (Joel D. Ber-

tocchi, Solicitor General, William L. Browers and Jay Paul Hoffmann, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and John M. McCarthy, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

In both of these cases, consolidated here, the defendant was convicted of predatory criminal sexual assault of a child. In one, cause No. 87382, we consider the right of confrontation granted by the United States Constitution and the Illinois Constitution (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8). In the other, cause No. 87434, we consider the right of due process granted by the United States Constitution (U.S. Const., amend. XIV, § 1). We address each cause separately.

In cause No. 87382, the defendant, Anthony W. Lofton, was charged by indictment in Kane County with two counts of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1(a)(1) (West 1996)), arising out of an incident that occurred early in September 1996. The defendant, a friend of the mother of the child, was alleged to have placed his finger in and on the vagina of M.H., five years old at the time. On the morning of defendant's trial by jury in February 1997, the State was heard on its motion that M.H. be permitted to testify by way of closed-circuit television, which motion the defendant resisted. Section 106B—5 (725 ILCS 5/106B—5 (West 1996)), concerning testimony by a child victim and commonly known as the Child Shield Act (*People v. Van Brocklin*, 293 Ill. App. 3d 156, 166 (1997)), provides in part,

"(a) In a proceeding in the prosecution of an offense of *** predatory criminal sexual assault of a child ***, a court may order that the testimony of a child victim under the age of 18 years be taken outside the courtroom and shown in the courtroom by means of a closed circuit television if:

(1) the testimony is taken during the proceeding; and

(2) the judge determines that testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate or that the child will suffer severe emotional distress that is likely to cause the child to suffer severe adverse effects.

(b) Only the prosecuting attorney, the attorney for the defendant, and the judge may question the child.

***

(d) Only the following persons may be in the room with the child when the child testifies by closed circuit television:

(1) the prosecuting attorney;

(2) the attorney for the defendant;

(3) the judge;

(4) the operators of the closed circuit television equipment; and

(5) any person or persons whose presence, in the opinion of the court, contributes to the well-being of the child, including a person who has dealt with the child in a therapeutic setting concerning the abuse, a parent or guardian of the child, and court security personnel.

(e) During the child's testimony by closed circuit television, the defendant shall be in the courtroom and shall not communicate with the jury if the cause is being heard before a jury.

(f) The defendant shall be allowed to communicate with the persons in the room where the child is testifying by any appropriate electronic method.

(g) The provisions of this Section do not apply if the defendant represents himself pro se.

(h) This Section may not be interpreted to preclude, for purposes of identification of a defendant, the presence of

both the victim and the defendant in the courtroom at the same time.

(i) This Section applies to prosecutions pending on or commenced on or after the effective date of this amendatory Act of 1994." 725 ILCS 5/106B—5 (West 1996).

At the hearing on this motion, the child's mother testified on direct examination that M.H. said of her feelings about seeing Anthony Lofton again "that [M.H.] was afraid and she doesn't want to have to look at him [defendant]." Her mother compared the child's altered behavior immediately after the incident with her much improved behavior at the time of trial. Immediately after the incident, the child's mother stated,

"[M.H.] wouldn't eat. She wasn't sleeping. If someone would knock on the door, she was real jumpy. When she would go in the bathroom to do normal body functions she took her feces and spread it all over the walls. She colored all over the walls with crayons. Withdrawn. She is usually friendly and talkative. She wouldn't open her mouth to anyone."

M.H.'s mother said that after Christmas of 1996 the child was her "normal self." However, after her mother informed her two days before trial began that she would have to testify about this matter, her mother said, M.H. had "been having nightmares again. Not eating really. Not sleeping, and she said she didn't want to come. She didn't want to see him [defendant]." The child's mother answered in the affirmative the question posed to her by the State as to whether she felt that her daughter "would suffer some trauma if she were forced to come into the courtroom and testify about what Mr. Lofton did to her in his presence." Responding to a question on cross-examination, she stated, "I think she will have some trauma if she has to testify and look at your client, yes." Rae Bramel, a sexual assault coordinator at the Community Crisis Center in Elgin, testified likewise about the child's extreme withdrawal shortly after the incident occurred and her dramatic improvement since that time.

This witness testified that on the morning of the hearing M.H.'s "words were to please keep us safe from Anthony" but that in all other respects she was "assertive, full of affect, lively."

In ruling on this motion, the trial court stated,

"Now, in order for this closed circuit television testimony to occur the Court must make a finding either that the child's testimony in the courtroom will result in the suffering of serious emotional distress such that the child cannot reasonably communicate or that the child will suffer severe emotional distress that is likely to cause the child to suffer severe adverse effects. Thus far, the testimony that I have heard is all focused on the child's fear of the defendant and the effect that seeing the defendant will have. I have heard nothing thus far that would suggest that testifying in the presence of a jury would have such an adverse effect. That was the opinion in the case cited by the State, *People v. Scott*, [284 Ill. App. 3d 336 (1996)], where the child's mother opined that the child could not testify in the courtroom in front of the jurors because she was shy and embarrassed. The setup of this courtroom is such that we can—some accommodation I believe is called for here. We can position the child in front of the jury with her back to the defendant. We can move these podiums behind her, and we can bring her into the room before the jury comes in and before the defendant comes in. I am willing to allow an individual, whether it be Miss Bramel or the child's mother, to sit in close proximity to the child during her testimony so long as they do not communicate with the child or in any way impede the questioning of the child. In this way the child will not see the defendant yet she will be testifying in front of the jury so that they can observe her. She may be questioned and cross-examined in front of the jury and never have to see the defendant. This would require, Mr. McCulloch [defense counsel], that you position yourself away from the counsel table during your questioning. I would, of course, permit you to make frequent trips back to your client to confer with him during the course of the testimony.

Now, if it proves that the child cannot communicate in

front of the jury and if that showing is made in—by her inability to communicate then, of course, I would consider and that would give me a basis upon which to make a necessary finding, but I would like to try this in this modified courtroom setup before we move to the closed circuit television. That's how I will rule.

Let's take a moment then to position a chair and to position the podiums. We will take a recess, and we'll have the child brought in before the defendant comes back."

After M.H. was seated as a witness, the trial court stated outside the presence of the jury, "We are in open court. The defendant is present with his attorney, Mr. McCulloch. Both prosecutors are present. And the alleged victim is seated in a chair directly in front of the jury box. Behind her are two podiums that are placed together, and seated next to her is our court reporter, Miss Hogan." Thereupon the following colloquy ensued between defense counsel and the trial court:

"MR. McCULLOCH: So the record is accurate, I don't want my silent assent to appear as an agreement to this procedure because I think that this is very peculiar. From where we sit we cannot see the witness. I'm not suggesting that the Chinese wall approach is what we sought nor do we think it's appropriate. Everything—

THE COURT: Mr. McCulloch, you are free to reposition yourself by all means so that you can see the witness. And I will not obstruct you in any way in doing that. I stated the purpose for this arrangement, and I think it is the least obtrusive way of accomplishing a needed result and based on the testimony I heard. If you want to move your chair you are free to do so.

MR. McCULLOCH: You would agree that it is peculiar in that it isolates the witness, and the jury gets the sense of being isolated, us being isolated from her, and anything I do to reposition it just sort of reinforces that problem.

THE COURT: I will give you an option here. Do you prefer the closed circuit television?

MR. McCULLOCH: I prefer open court as it's customarily known.

THE COURT: Between this arrangement and closed circuit do you prefer the closed circuit?

MR. McCULLOCH: I don't want it to look like I picked it.

THE COURT: It's clear that you are not picking it. I am giving you the choice of two alternatives.

MR. McCULLOCH: Given my earlier request, I guess no choice but to do this, but just it looks peculiar. I'm not for it."

At the conclusion of the child's direct testimony, the prosecutor told her, "I'm going to ask you to get up out of your chair for a minute, okay?" and asked her, "Can you come over here by me for one minute?" M.H. then left her chair to stand next to the prosecutor, who told her further, "I need you to look around at all the people in the courtroom, okay?" and asked, "See everybody that's in the courtroom?" In response the child nodded her head up and down. Then the prosecutor asked M.H., "Do you see the man that you knew named Anthony?" The child responded by shaking her head from side to side. Asked further by the prosecutor, "Do you see him anywhere in the courtroom?" the child answered, "No." Asked again by the prosecutor, "Do you see the man that you knew that you just talked about named Anthony, do you see him anywhere in this courtroom?" the child again answered, "No." The prosecutor reiterated the word, "No," and asked the child, "You are sure?" The child responded by nodding her head up and down.

At the conclusion of M.H.'s testimony and out of the presence and hearing of the jury, the trial court stated,

"I want to make a few remarks about this morning's proceedings for purposes of the record. Based upon the testimony of [M.H.'s mother] and Rae Bramel I made the specific findings that if the child were required to testify within the view of the defendant that the child would likely, based upon this testimony, experience severe emotional distress and would likely suffer severe adverse effects such as loss of appetite, nightmares, fear of other people and ab-berant [sic] behavior such as the testimony of her spreading feces on the wall and on another occasion coloring on

the wall. Thus, the witness was allowed to testify from a chair that was positioned directly in front of the jury box. Two podiums I would estimate approximately say four feet tall, is that a fair estimate?

MS. SIMPSON [assistant State's Attorney]: That would be close, your Honor.

THE COURT: Were placed side by side behind the witness' chair. The court reporter was positioned in a chair on the floor next to the child so that she could hear. The child was very soft spoken. And no one else was seated near the child. The child did have in her lap a doll ***.

\* \* \*

THE COURT: The defendant remained at counsel table. From his vantage point he was not able to see the alleged victim as she testified. The—his attorney, Mr. McCulloch, was allowed and frequently did leave counsel table and stand at a point where he could observe the witness, and he did make frequent trips back to counsel table to confer with his client. Now, hindsight is always perfect. As it turns out the State nevertheless in spite of all the evidence asked the child to stand and see if she could identify the defendant. Thus, the confrontation that I thought we were trying to avoid was nevertheless called for. Had I known that, I doubt that I would have made these arrangements, but what's done is done, and the record beyond that will speak for itself."

When Assistant State's Attorney Simpson indicated that the "[o]nly way that you are going [to] get the child to identify the person they are testifying about—" the trial court responded, "I don't want to argue with you, but had I known that that was the intent I might have done things differently."

M.H. was the first of several witnesses for the State. The defendant chose not to testify. The jury found defendant guilty of both counts of the indictment. Post trial, defendant moved for the entry of an order granting his motion, made during trial, for a directed finding or, in the alternative, for a new trial, contending, *inter alia*, that the State failed to prove him guilty of the charges beyond a reasonable doubt and that

"the Court erred in permitting the State to physically rear-range the Courtroom setting, resulting in a tableau type arrangement for the Complainant to testify and not allow the Defendant to then see the witness. The net result was to draw undue attention toward, and sympathy for, the Complainant and, at the same time, deny the Defendant his constitutional right to see and confront his accuser."

The trial court denied defendant's post-trial motion and imposed consecutive sentences of 18 years in the Department of Corrections with respect to count I and 12 years in the Department of Corrections with respect to count II. In denying defendant's post-trial motion the trial court stated,

"Based upon the evidence presented to me at the time, I concluded that given the child's age, her level of maturity and her condition, that some accommodation was necessary.

I fashioned what I believed was the minimal change necessary to allow the child to testify. I did that not expecting that the State would ask the child to actually view the defendant. Since I believed based upon the information presented that that would have been extremely traumatic. The child failed to identify the defendant in court. There was a face-to-face confrontation, however, at that point.

The child's voice was extremely low. It is most doubtful that she would have been able to communicate from the witness stand in any event. The microphone is stationary, it is situated approximately a foot from the witness chair. And I believe that even had that been attempted, that I would have needed to allow her to sit close to the jury so that they could at least hear her.

I did order that the two podiums be placed behind her as she sat in front of the jury box. Each is approximately four feet high and each is approximately two feet wide.

The defendant was present at all times. He was within approximately 15 or 17 feet. And as I mentioned, there was ultimately the face-to-face confrontation at the end of the testimony.

This I believe is a matter for the Court's discretion. I exercised that discretion, given the evidence available to me at the time."

Defendant appealed, contending, *inter alia*, that he had not been proved guilty beyond a reasonable doubt of predatory criminal sexual assault and that his rights to due process, to a fair trial, and to confront witnesses against him had been violated by the method the trial court used to present the testimony of M.H. After a review of the evidence, the appellate court expressly would not reverse defendant's convictions on the basis of his challenge to the sufficiency of the evidence. However, it reversed his convictions and remanded the cause for a new trial because the procedure the trial court employed with regard to the testimony of M.H. violated defendant's right to confront witnesses against him. *Lofton*, 303 Ill. App. 3d 501, 505. The appellate court determined that the Child Shield Act

"in no way provides for a courtroom setup designed to keep a witness from seeing the defendant because the witness may be afraid of the defendant.

In this case, the court made no findings that would bring the testimony of M.D.H. under the Act and, therefore, did not use the statutory closed-circuit television for her testimony. However, the setup that the court did order had no basis in law and was violative of defendant's right to confrontation. The legislature has provided a specific remedy for use in cases where specific findings regarding the welfare of the child witness are made. The procedures of the Act have been found to pass constitutional muster [in *People v. Van Brocklin*, 293 Ill. App. 3d 156 (1997)]. However, this does not mean that any other procedures fashioned by a court for reasons other than those stated in the Act are appropriate." *Lofton*, 303 Ill. App. 3d at 506.

The appellate court also found it "difficult to conceive how a child who does not recognize a person can be traumatized by seeing that person" (*Lofton*, 303 Ill. App. 3d at 507); determined that "[t]he detriment to defendant's right to confront witnesses and to not be placed in a bad light as a disturbing or intimidating party was not properly balanced by the isolation of the minor witness

from a person she did not recognize" (*Lofton*, 303 Ill. App. 3d at 507); and concluded that the actions of the trial court "had no constitutional or statutory basis" (*Lofton*, 303 Ill. App. 3d at 507). While the appellate court concluded that a further contention of defendant that one of his convictions must be vacated because he was convicted of more than one offense arising out of the same physical act was now moot because the appellate court had reversed both convictions and remanded the cause for a new trial, the appellate court pointed out to the court and the State, in the interests of judicial economy, that count II, as currently constituted, fails to allege facts sufficient for a charge of predatory criminal sexual assault of a child. We allowed the State's petition for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315).

Contending that the defendant, Anthony Lofton, was not denied his right to confront a witness when the trial court allowed the child witness to testify before the jury with podiums placed between her and the defendant, the State relies heavily upon *Maryland v. Craig*, 497 U.S. 836, 111 L. Ed. 2d 666, 110 S. Ct. 3157 (1990). The defendant, relying in great part upon *Craig* as well as the earlier case of *Coy v. Iowa*, 487 U.S. 1012, 101 L. Ed. 2d 857, 108 S. Ct. 2798 (1988), maintains that his rights to confront witnesses and to be afforded due process were violated when the child witness testified in front of the jury with physical barriers placed behind her in such a way that the defendant and the witness were unable to view each other during the testimony of the witness. No challenge is mounted against the constitutionality of the Child Shield Act, and we do not consider that question. As the defendant asserts, the issue in this case is not whether one-way closed-circuit television used to convey trial testimony violates a defendant's rights but whether the defendant's right to a face-to-face confrontation was

violated when the trial court implemented a scheme unauthorized by statute that not only prevented M.H. from seeing the defendant while she testified, as would occur when a child's testimony is taken by means of one-way closed-circuit television outside the courtroom pursuant to section 106B—5, but also prevented the defendant from seeing M.H. while she testified, as would not occur when a child's testimony is so taken.

The confrontation clause of the sixth amendment, made applicable to the states through the fourteenth amendment, provides, "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***" (U.S. Const., amend. VI). *Craig*, 497 U.S. at 844, 111 L. Ed. 2d at 677, 110 S. Ct. at 3162. The confrontation clause of the Illinois Constitution was amended on November 8, 1994, to remove the "face-to-face" language of article I, section 8, and conform this state's confrontation clause to that of the sixth amendment of the United States Constitution, so that it now provides, "In criminal prosecutions, the accused shall have the right *** to be confronted with the witnesses against him or her ***" (Ill. Const. 1970, art. I, § 8 (amended November 8, 1994)). *People v. Dean*, 175 Ill. 2d 244, 254 (1997); *People v. Weninger*, 292 Ill. App. 3d 340, 342 (1997). No argument is made that the defendant is entitled to greater protection under the Illinois Constitution, and we will apply the same analysis to both. See *People v. McClanahan*, 191 Ill. 2d 127, 131 n.1 (2000).

Both *Coy* and *Craig* required the Court to consider the constitutionality of courtroom procedures designed to prevent a child witness from having to face across an open courtroom a defendant charged with sexually assaulting the child. *White v. Illinois*, 502 U.S. 346, 357, 116 L. Ed. 2d 848, 860, 112 S. Ct. 736, 743 (1992). In *Coy* the Court vacated a conviction resulting from a trial in which child accusers testified from behind a large screen

and in which there had been no particularized showing that such a procedure was necessary to avert a risk of harm to the children. After certain lighting adjustments in the courtroom, the screen enabled the defendant in *Coy* dimly to perceive the child witnesses but permitted them to see the defendant not at all. *Coy*, 487 U.S. at 1014-15, 101 L. Ed. 2d at 863, 108 S. Ct. at 2800. In *Craig* the majority upheld a conviction resulting from a trial in which children testified against the defendant by means of one-way closed-circuit television after individualized showings of necessity.

In *Craig* the Court was required to decide whether the confrontation clause of the sixth amendment categorically prohibits a child witness in a child abuse case from testifying against a defendant at trial, outside the defendant's physical presence, by one-way closed-circuit television. Before the case went to trial, the State sought to invoke a Maryland statutory procedure, similar to that of section 106B—5, permitting a judge to receive, by one-way closed-circuit television, the testimony of a child witness alleged to be a victim of child abuse. To invoke the procedure, the trial court must first " 'determin[e] that testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate.' Md. Cts. & Jud. Proc. Code Ann. § 9—102(a)(1)(ii) (1989)." *Craig*, 497 U.S. at 841, 111 L. Ed. 2d at 675-76, 110 S. Ct. at 3161. Once the procedure has been invoked, the child witness, prosecutor, and defense counsel withdraw to a separate room, and the judge, jury, and defendant remain in the courtroom. The child witness is then examined and cross-examined in the separate room, while a video monitor records and displays the witness' testimony to those in the courtroom. During this time the witness cannot see the defendant, who remains in electronic communication with defense counsel. Objections may be

made and ruled upon as if the witness were testifying in the courtroom. In support of its motion in *Craig* invoking the one-way closed-circuit television procedure, the State presented expert testimony that the named victim, as well as a number of other children alleged to have been sexually abused by the defendant, would suffer " 'serious emotional distress such that [they could not] reasonably communicate' " (*Craig*, 497 U.S. at 842, 111 L. Ed. 2d at 676, 110 S. Ct. at 3161) if they were required to testify in the courtroom. The defendant objected to the use of the procedure on confrontation clause grounds.

In *Craig* the Court remarked upon its observation "in *Coy v. Iowa* that 'the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact.' [Citations.] This interpretation derives not only from the literal text of the Clause, but also from our understanding of its historical roots. [Citations.]" *Craig*, 497 U.S. at 844, 111 L. Ed. 2d at 677, 110 S. Ct. at 3162. The Court continued by saying that it had never, however, held that the confrontation clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial, adding,

"Indeed, in *Coy v. Iowa*, we expressly 'le[ft] for another day . . . the question whether any exceptions exist' to the 'irreducible literal meaning of the Clause: "a right to *meet face to face* all those who appear and give evidence *at trial.*" ' [Citation.] The procedure challenged in *Coy* involved the placement of a screen that prevented two child witnesses in a child abuse case from seeing the defendant as they testified against him at trial. [Citation.] In holding that the use of this procedure violated the defendant's right to confront witnesses against him, we suggested that any exception to the right 'would surely be allowed only when necessary to further an important public policy'— *i.e.*, only upon a showing of something more than the generalized, 'legislatively imposed presumption of trauma' underlying the statute at issue in that case. [Citations.] We

concluded that '[s]ince there ha[d] been no individualized findings that these particular witnesses needed special protection, the judgment [in the case before us] could not be sustained by any conceivable exception.' [Citation.]" (Emphasis in original.) *Craig,* 497 U.S. at 844-45, 111 L. Ed. 2d at 677-78, 110 S. Ct. at 3163.

Because the trial court in *Craig* made individualized findings that each of the child witnesses needed special protection, *Craig* required the Court to decide the question reserved in *Coy. Craig,* 497 U.S. at 845, 111 L. Ed. 2d at 678, 110 S. Ct. at 3163.

The central concern of the confrontation clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. *Craig,* 497 U.S. at 845, 111 L. Ed. 2d at 678, 110 S. Ct. at 3163. In *Craig* the Court observed that

"[a]lthough face-to-face confrontation forms 'the core of the values furthered by the Confrontation Clause,' [citation] we have nevertheless recognized that it is not the *sine qua non* of the confrontation right. See *Delaware v. Fensterer,* 474 U.S. 15, 22 (1985) (per curiam) ('[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony') [citations]." *Craig,* 497 U.S. at 847, 111 L. Ed. 2d at 679-80, 110 S. Ct. at 3164. "In sum," the Court concluded, "our precedents establish that 'the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial,' *Roberts,* [448 U.S.] at 63 (emphasis added; footnote omitted), a preference that 'must occasionally give way to considerations of public policy and the necessities of the case,' *Mattox,* [156 U.S.] at 243." *Craig,* 497 U.S. at 849, 111 L. Ed. 2d at 681, 110 S. Ct. at 3165.

As a consequence, the Court stated, it has interpreted the confrontation clause in a manner sensitive to its

purposes and sensitive to the necessities of trial and to the adversary process. *Craig*, 497 U.S. at 849, 111 L. Ed. 2d at 681, 110 S. Ct. at 3165. Accordingly, although the Court reaffirmed the importance of face-to-face confrontation with witnesses appearing at trial, it could not say that such confrontation is an indispensable element of the sixth amendment's guarantee of the right to confront one's accusers. *Craig*, 497 U.S. at 849-50, 111 L. Ed. 2d at 681, 110 S. Ct. at 3165-66. However, the Court emphasized,

"That the face-to-face confrontation requirement is not absolute does not, of course, mean that it may easily be dispensed with. As we suggested in *Coy*, our precedents confirm that a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850, 111 L. Ed. 2d at 681-82, 110 S. Ct. at 3166.

While the Court acknowledged that Maryland's statutory procedure, when invoked, prevents a child witness from seeing the defendant as he or she testifies against him at trial, the Court found

"it significant, however, that Maryland's procedure preserves *all of the other elements of the confrontation right*: The child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and *defendant* are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies. Although we are mindful of the many subtle effects face-to-face confrontation may have on an adversary criminal proceeding, the presence of these other elements of confrontation—oath, cross-examination, and observation of the witness' demeanor—adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." (Emphasis added.)

*Craig*, 497 U.S. at 851, 111 L. Ed. 2d at 682, 110 S. Ct. at 3166.

Confident that use of the one-way closed-circuit television procedure, where necessary to further an important state interest, does not impinge upon the truth-seeking or symbolic purposes of the confrontation clause, the Court determined that the critical inquiry in *Craig* was, therefore, whether use of the procedure was necessary to further an important state interest and concluded that a state's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, "at least in some cases," a defendant's right to face his or her accusers in court. *Craig*, 497 U.S. at 852-53, 111 L. Ed. 2d at 682-83, 110 S. Ct. at 3167.

Refusing to second-guess the considered judgment of the Maryland legislature regarding the importance of its interest in protecting child abuse victims from the emotional trauma of testifying, the Court held that, if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant. *Craig*, 497 U.S. at 855, 111 L. Ed. 2d at 685, 110 S. Ct. at 3169. The Court determined that the requisite finding of necessity must be case-specific, that is, the trial court must hear evidence and determine whether use of the one-way closed-circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify and must find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. If the state interest were merely the interest in protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child

could be permitted to testify in less intimidating sur-
roundings in the physical presence of the defendant.
*Craig*, 497 U.S. at 855-56, 111 L. Ed. 2d at 685, 110 S.
Ct. at 3169. Satisfied that the use of Maryland's special
procedure, where necessary to further the important
state interest in preventing trauma to child witnesses in
child abuse cases, adequately ensures the accuracy of the
testimony and preserves the adversary nature of the trial,
the Court concluded that

> "where necessary to protect a child witness from trauma
> that would be caused by testifying in the physical presence
> of the defendant, at least where such trauma would impair
> the child's ability to communicate, the Confrontation
> Clause does not prohibit use of a procedure that, despite
> the absence of face-to-face confrontation, ensures the reli-
> ability of the evidence by subjecting it to rigorous adver-
> sarial testing and thereby preserves the essence of effective
> confrontation. Because there is no dispute that the child
> witnesses in this case testified under oath, were subject to
> full cross-examination, and were able to be observed by the
> judge, jury, and *defendant* as they testified, we conclude
> that, to the extent that a proper finding of necessity has
> been made, the admission of such testimony would be
> consonant with the Confrontation Clause." (Emphasis add-
> ed.) *Craig*, 497 U.S. at 857, 111 L. Ed. 2d at 686, 110 S. Ct.
> at 3170.

Thus, although the confrontation clause generally
requires face-to-face confrontation, the requirement is
not absolute, the Supreme Court having carved out a
narrow exception when denial of face-to-face confronta-
tion is necessary to further an important public policy
and the necessities of the case require. *United States v.
Hamilton*, 107 F.3d 499, 503-04 (7th Cir. 1997). In the
instant case the trial court's innovation falls far outside
the narrow and limited exception created by *Craig*. When
a child witness testifies pursuant to section 106B—5,
which, as we have said, is similar to the statutory scheme
allowed in *Craig*, the child testifies under oath, is subject

to contemporaneous cross-examination, and "must testify under the watchful eyes of the parties and the fact finder." *Van Brocklin*, 293 Ill. App. 3d at 169. The right to confront witnesses includes the right to hear and to view them as they testify. *People v. Broyld*, 146 Ill. App. 3d 693, 698 (1986). When a defendant appears *pro se*, the right to confront witnesses includes the right to cross-examine adverse witnesses; when a defendant appears by counsel, the right to confront witnesses includes the ability to be of aid in counsel's cross-examination. *Broyld*, 146 Ill. App. 3d at 698. Here the defendant's inability to observe the manner of the witness while testifying could have prejudiced him by limiting his ability to suggest lines of examination to his attorney that might have been indispensable to effective cross-examination (see *People v. Nastasio*, 19 Ill. 2d 524, 530 (1960)). Unlike the use of one-way closed-circuit television provided for by the legislature in section 106B—5 and found permissible in *Craig*, the barricade the trial court erected behind M.H. completely precluded the defendant from seeing her while she testified. Under the provisions of section 106B—5 and the method deemed acceptable in *Craig*, the defendant is able to see the victim testify, although by video monitor. The measure the trial court devised here, however, permitted defendant no view of the testifying victim whatsoever. Moreover, while we recognize that the trial court was not relying on section 106B—5 for the accommodation it made, we note that prior to erecting this physical barrier between the child witness and the defendant the trial court appears to have made no findings that would have satisfied either of the bases set forth in section 106B—5(a)(2) for the use of one-way closed-circuit television. In sum, the trial court's adoption of this *ad hoc* procedure improperly expanded the narrow exception to the right to face-to-face confrontation created by the Court in *Craig* for the taking of testimony of

a child witness in a child abuse case by the use of one-way closed-circuit television.

The unauthorized alternative the trial court fastened upon of permitting the child witness to testify against the defendant barricaded by podiums limited the defendant's ability to aid in the cross-examination of the witness and thereby impinged upon the truth-seeking purpose of the confrontation clause (see *Craig*, 497 U.S. at 852, 111 L. Ed. 2d at 682, 110 S. Ct. at 3167). The novel arrangement devised by the trial court, authorized neither by statute nor by common law, failed to ensure the reliability of the evidence by subjecting it to rigorous adversarial testing and, thus, failed to preserve the essence of effective confrontation. While we acknowledge the trial court's concern with regard to striking a balance between the right of the defendant to confront the witnesses against him and the need to protect the child witness from trauma, this concern led to the creation of an apparently heretofore unknown arrangement of a courtroom that impermissibly abridged defendant's sixth amendment right to confront the child witness testifying against him. The admission of her testimony, given under such circumstances, was incompatible with the confrontation clause.

Although confrontation errors are constitutional violations, they do not automatically warrant reversal, and a defendant's conviction can be affirmed if the court is able to conclude the error was harmless beyond a reasonable doubt. *People v. Johnson*, 116 Ill. 2d 13, 28 (1987). However, such error cannot be considered harmless unless the State has proved beyond a reasonable doubt that the error did not contribute to the finding of guilt. *McClanahan*, 191 Ill. 2d at 139; *People v. McNeal*, 175 Ill. 2d 335, 355 (1997). The State has confined its argument to the theory that the trial court's innovative arrangement of the courtroom did not infringe upon

defendant's right of confrontation. However, the State does not argue that any such error was harmless. Thus, the State has failed to satisfy its burden of showing beyond a reasonable doubt that the error did not contribute to the guilty verdict.

As we indicated *supra*, the appellate court addressed defendant's contention that he had not been proved guilty beyond a reasonable doubt of predatory criminal sexual assault but expressly would not reverse his convictions on the basis of his challenge to the sufficiency of the evidence. Inasmuch as he does not here dispute the sufficiency of the evidence, we do not consider that question, already determined adversely to his position by the appellate court. Hence, defendant cannot subsequently claim that retrial is barred by evidentiary insufficiency. See *Johnson*, 116 Ill. 2d at 29; *People v. Taylor*, 76 Ill. 2d 289, 309 (1979).

For the foregoing reasons, we hold that the trial court's use of podiums that prevented the child witness and the defendant from seeing one another as she testified abrogated defendant's right to confrontation guaranteed by the United States and Illinois Constitutions. In light of this holding, we do not reach defendant's further claim that the use of the podiums in this manner violated his constitutional right to due process, nor do we consider any of the other issues addressed by the appellate court in its opinion but not presented to this court for review. Therefore, we affirm the judgment of the appellate court in cause No. 87382, holding that the procedure adopted by the trial court for use during the testimony of M.H. violated defendant's right to confrontation, reversing his convictions, and remanding the cause for a new trial.

In cause No. 87434, the defendant, Richard Stewart, was charged in Champaign County with two counts of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1(a)(1) (West 1996)), arising out of incidents oc-

curring between January 1 and March 10 of 1997. The defendant, who is the uncle of the child, T.N., was alleged to have placed his mouth on the sex organ of T.N. and to have placed his finger in her sex organ. T.N. was 12 years old at the time of these incidents; defendant was 43. At the time the offenses were alleged to have been committed defendant was living with his sister and her children, including T.N., and had lived with them for about a year and a half prior thereto. Before the selection of the jury, at the outset of the hearing conducted on the State's motion to consider the admissibility of hearsay evidence as an exception to the hearsay rule pursuant to section 115—10(b)(1) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10 (West 1996)), the trial court stated, "Ms. Dobson is here on behalf of the People. Mr. Barnes is here on behalf of the defendant." The trial court then asked, "Do we anticipate the Defendant's presence, counsel?" Defense counsel responded, "No, your Honor. I didn't ask him to be brought over." The hearing was conducted, at which T.N., her mother, and a police investigator testified. At the conclusion of the hearing the trial court concluded that the time, content, and circumstances surrounding T.N.'s hearsay statements made them reliable. At trial these three witnesses, as well as a pediatrician who had examined T.N., testified in behalf of the State. Defendant testified, denying having abused T.N. In his behalf he called other witnesses, including his 24-year-old son. The jury found defendant guilty of both counts. The trial court denied defendant's motion for a new trial and sentenced him to two concurrent 18-year terms. The question before us is whether the hearing on the motion brought pursuant to section 115—10 prior to the commencement of trial involves such a substantial right of the accused that his absence from the hearing vitiates any action taken with respect to it (see *People v. Woods*, 27 Ill. 2d 393, 395 (1963)).

Section 115—10 provides in part:

"(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13 ***, including but not limited to prosecutions for violations of sections 12—13 through 12—16 of the Criminal Code of 1961 [720 ILCS 5/12—13 through 12—16 (West 1996)] ***, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child *** of an out of court statement made by such child *** that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child *** describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act perpetrated upon or against a child ***.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child *** :

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

(c) If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child ***, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." 725 ILCS 5/115—10(a), (b), (c) (West 1996).

Upon defendant's appeal, he contended, *inter alia,* that the admission of hearsay evidence violated his rights of confrontation and of due process. With respect to the latter contention, he claimed that his absence from the hearing conducted pursuant to section 115—10 violated

his due process right because that hearing bore a substantial relationship to his opportunity to defend himself and that, as a result, his absence from this critical stage affected the fairness of the trial.

The appellate court concluded that defendant's right of confrontation had not been violated. *Stewart*, 303 Ill. App. 3d 844, 850. However, because of the importance of hearings conducted pursuant to section 115—10, the appellate court determined that defendants have a due process right to be present at these hearings and that defendant's absence violated his right to due process, a violation amounting to plain error. While the appellate court "acknowledge[d] defendant's presence during this hearing may have had no effect on the outcome of the case," it concluded that "the significance of the hearing warranted his presence, unless he voluntarily, knowingly, and intelligently waived this right." *Stewart*, 303 Ill. App. 3d at 851. The appellate court found no such waiver. Accordingly, the appellate court reversed the judgment of the trial court and remanded the cause for a new trial. The appellate court concluded further that the evidence was sufficient to find defendant guilty beyond a reasonable doubt, so that defendant faces no risk of double jeopardy upon retrial. Because the appellate court reversed the judgment of the trial court on the basis of a violation of defendant's right to due process, it found no need to address his argument that he received ineffective assistance of counsel. We allowed the State's petition for leave to appeal pursuant to Rule 315 (177 Ill. 2d R. 315).

In this court the State contends that defendant, Richard Stewart, was not denied his right of due process as a consequence of his absence from the hearing conducted pursuant to section 115—10. Defendant makes several contentions: that he was denied his right to be present at all critical stages where the trial court conducted this hearing outside of his presence; that he

did not waive this issue by failing to raise it in the trial court; that the appellate court erroneously concluded that his right to confront witnesses was not violated when the section 115—10 hearing was conducted outside his presence; that the appellate court erroneously concluded that his presence at that hearing would have no impact on the integrity of the truth-seeking process; and that the appellate court correctly concluded that the section 155—10 hearing is so important to the administration of justice that the defendant has an absolute right to be present during substantive testimony given by adults. Defendant also seeks cross-relief, contending that trial counsel was constitutionally ineffective for failing to cross-examine the complaining witness' mother properly at the hearing conducted pursuant to section 115—10 to determine the reliability of the complaining witness' statement used to convict him.

Under the United States Constitution a criminal defendant has a general right to be present at every stage of his trial. *People v. Bean*, 137 Ill. 2d 65, 80, 82 (1990). When the accused is not present in person, the error is not cured by the presence of his counsel, as his attorney has no power to waive his right to be present. *People v. Smith*, 6 Ill. 2d 414, 416 (1955). The nearly unanimous rule in this country is that the defendant's constitutional right to be present at the trial does not embrace a right also to be present at the argument of motions prior to trial or subsequent to verdict. *Woods*, 27 Ill. 2d at 395. However, the Court has assumed that even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right " 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.' " *Kentucky v. Stincer*, 482 U.S. 730, 745, 96 L. Ed. 2d 631, 647, 107 S. Ct. 2658, 2667 (1987), quoting *Snyder v. Massachusetts*,

291 U.S. 97, 105-06, 78 L. Ed. 674, 678, 54 S. Ct. 330, 332 (1934). Although the Court has emphasized that this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow" (*Snyder*, 291 U.S. at 106-07, 78 L. Ed. at 678, 54 S. Ct. at 332), due process clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence" (*Snyder*, 291 U.S. at 108, 78 L. Ed. at 679, 54 S. Ct. at 333). *Stincer*, 482 U.S. at 745, 96 L. Ed. 2d at 647, 107 S. Ct. at 2667. Therefore, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure. *Stincer*, 482 U.S. at 745, 96 L. Ed. 2d at 647, 107 S. Ct. at 2667.

Under the due process clause of the fourteenth amendment, a criminal defendant's right of presence is violated only when his absence results in the denial of a fair and just trial. *People v. Bull*, 185 Ill. 2d 179, 201 (1998); *Bean*, 137 Ill. 2d at 83. The question is not whether "but for" the outcome of the proceeding the defendant would have avoided conviction but whether the defendant's presence at the proceeding would have contributed to his opportunity to defend himself against the charges. *Stincer*, 482 U.S. at 744 n.17, 96 L. Ed. 2d at 647 n.17, 107 S. Ct. at 2667 n.17. The justice or injustice of the exclusion of the defendant must be determined in the light of the whole record. *Snyder*, 291 U.S. at 115, 78 L. Ed. at 683, 54 S. Ct. at 336.

In *Snyder*, although the majority and dissent disagreed as to whether due process required the presence of the defendant at a view of the scene by the jury during trial, the majority concluding that it did not, both agreed that defendants have the right to be personally present at every stage of the trial where their substantial rights may be affected by the proceedings and where their pres-

ence relates to the fullness of their opportunity to defend against the charge. In *Stincer* the respondent, who was the defendant in a criminal action in which he had been found guilty of first degree sodomy, contended that his due process rights had been violated by his exclusion from the hearing conducted to determine the competency to testify of the two young girls against whom he was accused of having committed sodomy. The respondent in *Stincer* gave no indication that his presence at the competency hearing would have been useful in ensuring a more reliable determination as to whether the witnesses were competent to testify. The majority in *Stincer* concluded that the due process rights of the respondent had not been violated by his exclusion from the hearing on the competency of the two witnesses to testify, emphasizing "the particular nature of the competency hearing" (*Stincer*, 482 U.S. at 745, 96 L. Ed. 2d at 647, 107 S. Ct. at 2667), at which "[n]o question regarding the substantive testimony that the two girls would have given during trial was asked" (*Stincer*, 482 U.S. at 745-46, 96 L. Ed. 2d at 647, 107 S. Ct. at 2667) and at which:

> "[a]ll the questions, instead, were directed solely to each child's ability to recollect and narrate facts, to her ability to distinguish between truth and falsehood, and to her sense of moral obligation to tell the truth. Thus, although a competency hearing in which a witness is asked to discuss upcoming substantive testimony might bear a substantial relationship to a defendant's opportunity better to defend himself at trial, that kind of inquiry is not before us in this case." *Stincer*, 482 U.S. at 746, 96 L. Ed. 2d at 647-48, 107 S. Ct. at 2667-68.

As this court observed in *People v. Keene*, 169 Ill. 2d 1, 13 (1995), the Court's analysis in *Stincer* turned on the nature of the hearing from which the defendant had been excluded.

Here, much like the situation the Court envisioned but did not encounter in *Stincer*, the questioning of the alleged child victim, her mother, and the police investiga-

tor at the section 115—10 hearing did touch upon the upcoming substantive trial testimony of the witnesses to a very great extent. T.N. described defendant's molestation of her, and her mother and the police investigator described T.N.'s statements concerning the matter to each of them. The substantive points elicited during the section 115—10 hearing unquestionably bore a "substantial relationship" to defendant's opportunity better to defend himself at trial. See *Stincer*, 482 U.S. at 746, 96 L. Ed. 2d at 647-48, 107 S. Ct. at 2667-68; *Keene*, 169 Ill. 2d at 14.

The defendant contends that not until trial, at which he was present, did his counsel elicit testimony from T.N.'s mother that T.N. had a motive to lie about the defendant's molestation of her—testimony that could have been obtained the day before trial during the section 115—10 hearing had defendant been present then, testimony that would have undermined a finding that the circumstances of T.N.'s statements provided sufficient safeguards of reliability, as required by section 115—10(b)(1). Specifically, defendant points to the testimony of T.N.'s mother on cross-examination during trial regarding the circumstances under which T.N. accused defendant of sexually assaulting her.

During the section 115—10 hearing, conducted the day before the jury was chosen and the trial began, T.N.'s mother testified on direct examination by the State that T.N. had informed her after an argument between T.N. and her older brother that defendant was molesting her. Following that argument the witness took T.N. aside to speak with her about, among other things, sexual conduct. At the section 115—10 hearing, T.N.'s mother testified on cross-examination that teasing between T.N. and her brother had "started it all," teasing that the witness had not heard but had been "reported" to her.

However, at trial during cross-examination of this

witness defense counsel elicited numerous facts concerning the circumstances that led to T.N.'s statements about defendant's sexual assaults upon her. On cross-examination at trial, T.N.'s mother testified that a friend of the family had been present during the "tiff" between T.N. and her sibling and that thereafter T.N.'s mother asked T.N. if "she was sexually involved or if she was playing around with another little boy in the neighborhood [named Mike]." She asked T.N. "[i]f she was playing around with somebody or if she had let somebody play around with her" and told her that she "thought that this little boy Mikey and her had done something." Following "[a]t least five or six" denials by T.N. that this was so in response to her mother's claim that she "knew there was something going on," T.N.'s mother told T.N. that she was "going to take her to a doctor because the doctor could tell if she had any sexual—whether they [*sic*] can or not—[she] had told [T.N.] that [she] was going to take her to the doctor and have her checked." According to her mother, T.N. responded by saying, "Oh, so a doctor can tell if you have done anything like that." Her mother said, "[Y]es." Then T.N. asked her older brother, who was present, to leave the room, burst into tears, and told her mother, "[M]om, it's Rick, Uncle Rick is the only one that's been messing with me." T.N.'s mother testified that in response she "jumped up" and asked, "[T.N.], are you telling me the truth and she said, yes mom, and I said oh, I'm so sorry baby and I grabbed her and I hugged her and I kissed her and I told her I loved her. And I asked her to go into my—her bedroom and wait for me until I came and got her, because I needed to get my shit together and figure out what I was going to do."

Defendant argues that by describing defendant as having molested her, T.N. went from being a child in trouble with her mother for having engaged in sexual

activity with a 13-year-old boy in the neighborhood to being a victim, consoled and comforted by her. Defendant asserts that had T.N.'s motive to lie been exposed at the section 115—10 hearing, the trial court would not have found her statements sufficiently reliable to be allowed into evidence and that, as a consequence, there is a reasonable probability he would not have been convicted. The State argues, among other things, that defense counsel was present at the section 115—10 hearing and that defendant had no *direct* knowledge of the hearsay statements found admissible because he was not present when any of the statements were made, so that his presence at the hearing bore no substantial relationship to his ability to present his defense and, thus, was not required. The State maintains further that T.N.'s testimony that defendant had told her not to tell anyone anything about these incidents because he would "go back to prison for a long time" supports the inference that T.N. was trying to protect him by remaining silent until she was falsely accused of having had sexual relations with a boy in her neighborhood.

In light of the entire record, we cannot say that there is nothing defendant could have done had he been present at the section 115—10 hearing and nothing he could have gained (see *Snyder*, 291 U.S. at 108, 78 L. Ed. at 679, 54 S. Ct. at 333). Numerous details, possibly disadvantageous to the State's position, about precisely how T.N. came to accuse the defendant were elicited at trial at which defendant was present, whereas virtually none were elicited at the section 115—10 hearing the day before from which he had been absent. Even if, as the State maintains, defendant did lack direct knowledge of the hearsay statements in question or how they came to be made, we are mindful that this is an intrafamilial incident, information about which defendant might well have obtained through one or more members of his fam-

ily. The record suggests that defendant's presence at the section 115—10 hearing would have contributed to his ability to defend himself against the charges, so that his "privilege of presence" would not have been "useless, or the benefit but a shadow" (*Snyder*, 291 U.S. at 106-07, 78 L. Ed. at 678, 54 S. Ct. at 332).

On the basis of the record we think that defendant's presence at the section 115—10 hearing would have been useful in ensuring a more reliable determination as to the admissibility of T.N.'s statements (see *Stincer*, 482 U.S. at 747, 96 L. Ed. 2d at 648, 107 S. Ct. at 2668) and would have contributed to his opportunity to defend himself against the charges lodged against him. We agree entirely with the appellate court's astute observation that "[i]n some child sex abuse cases, hearsay testimony may be the only evidence supporting the victim's allegations. The outcome of the section 115—10 hearing is potentially the most important determination during the case and bears a substantial relationship to defendant's ability to establish a defense" (*Stewart*, 303 Ill. App. 3d at 851). This defendant should have had the opportunity to present to the trial court the details of T.N.'s provocation to accuse him of molesting her for the court's consideration in determining whether "the time, content, and circumstances of the statement provide sufficient safeguards of reliability," required by section 115—10(b)(1). Certainly the record indicates that defendant's presence at the section 115—10 hearing would have borne a relation, reasonably substantial, to the fullness of his opportunity to defend against the charges. By the time trial began and defendant was present to defend against the charges, it was too late for him to protest the admissibility of T.N.'s hearsay statements, damaging in the extreme to his defense. Because the record indicates that defendant's presence at the section 115—10 hearing would have contributed to the fairness of the criminal

proceeding against him and that a fair and just hearing was thwarted by his absence, we conclude that the section 115—10 hearing was a stage critical to the outcome of the criminal proceeding at which defendant had a right to be present. Hence, we are brought to the conclusion that defendant's absence resulted in his being denied a fair and just trial, thereby violating his due process right of presence (see *Bean*, 137 Ill. 2d at 83).

Where the right to be present exists, the defendant must waive that right knowingly and voluntarily. See *Taylor v. United States*, 414 U.S. 17, 18-20, 38 L. Ed. 2d 174, 176-78, 94 S. Ct. 194, 195-96 (1973). Nothing in this record suggests that the defendant knowingly and voluntarily waived his right to be present at the section 115—10 hearing.

Because defendant claimed for the first time on review in the appellate court that he was denied his right to be present at all critical stages of the proceedings when the trial court conducted the 115—10 hearing outside of his presence, the State contends that he has waived the issue for review. However, as defendant asserts and the appellate court determined, this issue must be treated as plain error, which is a narrow and limited exception to the general rule concerning waiver and which may be invoked only where the evidence is closely balanced or the alleged error so substantial that it deprived the defendant of a fair trial (*Bull*, 185 Ill. 2d at 200). Here, where the defendant's absence resulted in a denial of his constitutional right to due process pursuant to the fourteenth amendment of the United States Constitution, plain error occurred.

As we indicated *supra*, the appellate court concluded that the evidence was sufficient to find defendant guilty beyond a reasonable doubt, so that defendant faces no risk of double jeopardy upon retrial. Defendant does not renew that contention in this court, and we do not review

it. The question having already been determined adversely to defendant's position by the appellate court, defendant cannot hereafter claim that retrial is barred by evidentiary insufficiency. See *Johnson*, 116 Ill. 2d at 29; *Taylor*, 76 Ill. 2d at 309.

Because of our determination with respect to the deprivation of defendant's right to due process afforded him by the fourteenth amendment of the United States Constitution, we need not consider his cross-claim of ineffective assistance of counsel at the section 115—10 hearing, based upon trial counsel's failure to cross-examine T.N.'s mother properly at this hearing. Nor do we consider any of the other issues addressed by the appellate court in its opinion but not presented to this court for review.

For the foregoing reasons, we affirm the judgment of the appellate court in cause No. 87434, reversing the judgment of the trial court and remanding the cause for a new trial. However, because defendant was deprived of due process as a result of being absent from a critical stage of the criminal proceeding against him, namely, the hearing conducted pursuant to section 115—10, we remand the cause to the circuit court not merely for a new trial but also for a new section 115—10 hearing at which defendant is present, unless he validly waives his right of presence.

*No. 87382—Appellate court judgment affirmed.*
*No. 87434—Appellate court judgment affirmed as modified; cause remanded with directions.*