# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Salgado*, 2012 IL App (2d) 100945

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE L. SALGADO, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-0945 |
| Filed | March 15, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for felony domestic battery was reversed and the cause was remanded for a proper determination of defendant's guilt, where the procedure whereby defendant's daughter was allowed to testify in the judge's chambers while defendant remained in the courtroom violated defendant's confrontation right, and even though the State argued defendant waived his right to be present by agreeing to remain in the courtroom when his daughter testified, there was no showing that the trial court took care to ensure that defendant understood his confrontation right and knowingly and voluntarily waived that right. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 10-CF-401; the Hon. Robert J. Morrow, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Thomas A. Lilien and Yasemin Eken, both of State Appellate Defender's Office, of Elgin, for appellant. |
| | |
| | Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Scott Jacobson, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices Bowman and Burke concurred in the judgment and opinion. |

## OPINION

¶ 1   Defendant, Jose L. Salgado, appeals from his conviction of two counts of Class 4 felony domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2010)). He asserts that the court violated his right to confront one witness against him when it held part of his trial outside his presence without taking a proper waiver of the confrontation right. We agree that the court violated defendant's confrontation right. Barring a defendant from seeing and hearing testimony is an extraordinary limitation on a defendant's participation in his or her trial. Any court that contemplates such nonstandard proceedings must take the greatest care to ensure that the defendant understands his or her right to be present for all testimony and that the defendant is waiving that right knowingly and voluntarily. The purported waiver here fell far short of that standard; it was patently insufficient. Moreover, this was plain error. We therefore reverse defendant's convictions and remand the cause without addressing the other claims of error he has raised.

¶ 2                          I. BACKGROUND

¶ 3   A grand jury indicted defendant of two counts of Class 4 felony domestic battery. The two counts were identical, except that in one the theory of the offense was that the contact caused bodily harm, while in the other the theory was that the contact was insulting or provoking. The State charged the offense as a Class 4 felony because defendant had a prior domestic battery conviction. Retained counsel entered an appearance for defendant. Defendant waived his right to a jury.[1]

¶ 4   Neither party made an opening statement at defendant's trial. The court told the State to call its first witness, and the State responded, "It is a minor child, so we're asking to go back

---

[1]One of his claims of error on appeal is the validity of his jury waiver, but we need not address that issue here. However, we note that the rule in *People v. Bracey*, 213 Ill. 2d 265 (2004), requires a new waiver for any retrial.

into chambers." The court said, "All right." Defense counsel asked that defendant's handcuffs be removed, but the State said, "I thought when we were going back in chambers, I thought this would be outside the presence of defendant." The court asked defense counsel what his position was, and counsel asked "for a moment with [his] client." The court agreed to that, and the next thing in the record is defense counsel's stating, "The defendant will remain." Defendant was left in the courtroom while the witness, defendant's daughter, nine-year-old Brianna Salgado, testified in chambers.

¶ 5        Brianna testified that, on the day of the incident, she, her younger brother, and her mother were sleeping in her mother's bed. Defendant came into the room. Brianna thought that he was drunk because he was acting "crazy," but she said he also looked "kind of sleepy." Initially, when asked what had happened between her parents, she said that defendant "pulled" her mom. Asked by the State to explain further, she said, "My mom showed me right now. It was like that." The State then asked whether she had seen what happened, and she responded by grabbing one arm with the other. Defendant then left the room and turned the television on loud. Her older brother, Brian, went to see what was happening, and defendant started yelling that Brian was not his son. Next, defendant called the police. Before the police came, he told Brianna to tell them that Brian or her mother had hit her.

¶ 6        On cross-examination, she said that the events took place at one or two in the morning and that she had been only partially awake. She said that, when defendant came in, he told her mother to come to the living room. Before that, he was saying "lies." She agreed that defendant had tried to lift her mother out of bed, but then, when her mother said that she had to work the next day, he left her alone.

¶ 7        The hearing reconvened in the courtroom, and the State called Iliana Ortiz, the victim. She said that she had been married to defendant for 8 years and had lived with him for 15. Her testimony was largely consistent with Brianna's. Her arm hurt when defendant pulled it, and the contact left a red mark. On cross-examination, she did not agree that defendant had turned the television on loud after leaving the room.

¶ 8        The officer who responded to the call testified that Ortiz was visibly upset and had some red "scuff marks" on her right arm and right thigh. Defendant was present and obviously intoxicated.

¶ 9        The State rested after the officer's testimony, and the defense then rested also. The court found defendant guilty on both counts. It later sentenced him to 18 months' imprisonment. Defendant filed neither a posttrial nor a postsentencing motion, but he did file a timely notice of appeal.

¶ 10                                            II. ANALYSIS

¶ 11        Defendant has raised three claims of error on appeal. We address only the second: that his exclusion during Brianna's testimony violated his confrontation right. We hold that defendant did not properly waive his right to be present during Brianna's questioning. Moreover, this was plain error.

¶ 12        The court's underlying error is similar to that discussed by the supreme court in *People v. Lofton*, 194 Ill. 2d 40 (2000), although the error here resulted in a greater loss of the right

to confront a witness. The defendant in *Lofton* was charged with predatory criminal sexual assault of a child. The State sought to have the victim testify via closed-circuit television, as section 106B-5 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/106B-5 (West 1996)) permits when the court has made the required findings of fact. The trial court ruled that it could not make those findings, but decided that, as an accommodation to the child, it would rearrange the courtroom so that the child could not see the defendant. The arrangement also prevented the defendant from seeing the child. The defendant, unlike defendant here, objected to the arrangement contemporaneously and raised the matter again in a posttrial motion. *Lofton*, 194 Ill. 2d at 46-50.

¶ 13    The *Lofton* court noted that the Supreme Court, in *Maryland v. Craig*, 497 U.S. 836 (1990), had ruled that provisions akin to section 106B-5 do not violate the confrontation clause of the United States Constitution. *Lofton*, 194 Ill. 2d at 56-59. However, because it did not allow the defendant to see the witness, the arrangement created by the trial court was a harmful violation of the right to confront witnesses:

"[T]he trial court's innovation falls far outside the narrow and limited exception created by *Craig*. *** The right to confront witnesses includes the right to hear and to view them as they testify. [Citation.] *** [W]hen a defendant appears by counsel, the right to confront witnesses includes the ability to be of aid in counsel's cross-examination. [Citation.] Here the defendant's inability to observe the manner of the witness while testifying could have prejudiced him by limiting his ability to suggest lines of examination to his attorney that might have been indispensable to effective cross-examination [citation]." *Lofton*, 194 Ill. 2d at 59-60.

¶ 14    The "innovation" undermined the basic purposes of a trial:

"The unauthorized alternative the trial court fastened upon of permitting the child witness to testify against the defendant barricaded by podiums limited the defendant's ability to aid in the cross-examination of the witness and thereby impinged upon the truth-seeking purpose of the confrontation clause [citation]. The novel arrangement devised by the trial court, authorized neither by statute nor by common law, failed to ensure the reliability of the evidence by subjecting it to rigorous adversarial testing and, thus, failed to preserve the essence of effective confrontation. *** The admission of [the witness's] testimony, given under such circumstances, was incompatible with the confrontation clause." *Lofton*, 194 Ill. 2d at 61.

¶ 15    Because the error violated the defendant's fundamental constitutional rights, and because the State had failed to show that the error was harmless beyond a reasonable doubt, the error was reversible:

"Although confrontation errors are constitutional violations, they do not automatically warrant reversal, and a defendant's conviction can be affirmed if the court is able to conclude the error was harmless beyond a reasonable doubt. [Citation.] However, such error cannot be considered harmless unless the State has proved beyond a reasonable doubt that the error did not contribute to the finding of guilt. [Citations.] The State has confined its argument to the theory that the trial court's innovative arrangement of the courtroom did not infringe upon defendant's right of confrontation.

*** Thus, the State has failed to satisfy its burden of showing beyond a reasonable doubt that the error did not contribute to the guilty verdict." *Lofton*, 194 Ill. 2d at 61-62.

¶ 16    Here, for Brianna's testimony, the deprivation of the right to confrontation was total, as defendant was unable even to hear the testimony. The State, however, asserts that the right at issue is merely the right to be present at trial, which derives from the fourteenth-amendment due-process right, and not the more fundamental confrontation right. This argument is an ineffectual sidestep. The right to be present at trial "is not itself a substantial right under the Illinois Constitution" but is rather a "lesser right the observance of which is a means to securing the substantial rights of a defendant." *People v. Bean*, 137 Ill. 2d 65, 80-81 (1990). "Some of these substantial rights are *the right to confront witnesses*, the right to present a defense, and the right to an impartial jury." (Emphasis added.) *Bean*, 137 Ill. 2d at 81. Thus, when a court improperly denies a defendant the opportunity to be present at trial, the question becomes whether the absence impaired a substantial right. See *Bean*, 137 Ill. 2d at 82. When the defendant is absent for the questioning of a witness, the loss is of the right to confront that witness, and a reviewing court must analyze the issue accordingly.

¶ 17    The State argues that defendant waived his right to be present for Brianna's testimony by agreeing to be left in the courtroom. We disagree. The waiver plainly was not proper as nothing in the record shows that defendant understood that he had a right to be present. In *People v. Stroud*, 208 Ill. 2d 398, 409 (2004), the supreme court discussed what kind of waiver due process requires for a defendant to properly give up his or her right to be physically present at a guilty plea hearing, appearing instead by video link. The court noted that presence by video link is better than no presence at all, but that it was not a good equivalent:

> " 'In a televised appearance, crucial aspects of a defendant's physical presence may be lost or misinterpreted, such as the participant's demeanor, facial expressions and vocal inflections, the ability for immediate and unmediated contact with counsel, and the solemnity of a court proceeding. In a guilty plea hearing, as in a trial, these components may be lost if a defendant's appearance is through closed circuit television.' " *Stroud*, 208 Ill. 2d at 407 (quoting *People v. Guttendorf*, 309 Ill. App. 3d 1044, 1047 (2000)).

Moreover, " '[t]he atmosphere of the courtroom can play a critical, albeit intangible, role in the proceedings, including a hearing on a plea.' " *Stroud*, 208 Ill. 2d at 407 (quoting *Guttendorf*, 309 Ill. App. 3d at 1046). Because of these effects, and because the guilty plea hearing is the crux of the proceeding, requiring a defendant to appear at such a hearing by video link impairs his or her substantial rights. *Stroud*, 208 Ill. 2d at 409. The *Stroud* court therefore held that "a defendant's appearance at a guilty plea proceeding via closed-circuit television is constitutionally permissible only if *the defendant waives the right to physical presence on the record after being advised of his right to be present*." (Emphasis added.) *Stroud*, 208 Ill. 2d at 409. A defendant's absence during the questioning of a central witness is, we submit, a greater impingement on a defendant's substantial rights. The waiver must be at least as clear.

¶ 18    The waiver here did not come close to meeting this standard. All the record tells us is that counsel, who seems to have reacted to the State's proposed arrangement with understandable

surprise, had a moment to speak to defendant. We doubt that counsel could extemporize a full admonishment of the right to be present. Only with a record of a knowing and voluntary waiver can we be certain that the court has respected a defendant's rights. No such record exists here.

¶ 19     The State argues that we should draw the waiver standard from two other classes of cases: (1) those concerning when defendants can forfeit the right to remain in the courtroom by misbehavior; and (2) those concerning agreement to stipulated testimony. Neither class of cases suggests to us that the waiver here was proper.

¶ 20     A defendant can, by "conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom," forfeit the right to be present in the courtroom. *Illinois v. Allen*, 397 U.S. 337, 343 (1970). However, even when a defendant is disruptive, "courts must indulge every reasonable presumption against the loss of constitutional rights." *Allen*, 397 U.S. at 343. Here, defendant was not disruptive, so he did not forfeit his confrontation right. Further, the court took no particular care to ensure that defendant understood that he had the right to be present during Brianna's testimony, and thus it did not indulge every reasonable presumption against the loss of the right.

¶ 21     We agree with the State that a defendant can, when defense counsel agrees to the admission of stipulated testimony, waive his or her confrontation right as to that testimony. *People v. Campbell*, 208 Ill. 2d 203, 215 (2003). However, we deem the reasoning in *Stroud* to be more appropriate here. The loss of the confrontation right by way of stipulation is a loss of very limited scope. By the nature of a stipulation, both parties know in advance precisely what the finder of fact is going to hear and the manner in which it will be presented. The dynamics are profoundly different from those with a live witness: the defendant has no particular need to interact with defense counsel contemporaneously. With live testimony, a defendant's ability to see and to interact with counsel is critical, and the damage from that loss is unknowable. If due process requires a knowing and voluntary waiver for a video-linked guilty plea hearing, such a waiver is even more necessary when a defendant will be completely absent during live testimony.

¶ 22     Defendant did not raise this claim in the trial court. However, the error is reversible as plain error. "The plain-error doctrine *** allows a reviewing court to reach a forfeited error affecting substantial rights in two circumstances." *People v. Herron*, 215 Ill. 2d 167, 178 (2005). The first is when the evidence is closely balanced. Second, "where the error is so serious that the defendant was denied a substantial right, and thus a fair trial, a reviewing court may consider a forfeited error in order to preserve the integrity of the judicial process." *Herron*, 215 Ill. 2d at 179. The second type of error is present here. The supreme court has stated that a defendant's absence from a courtroom is plain error only when it deprives him or her of "an underlying substantial right, in other words, a constitutional right." *Bean*, 137 Ill. 2d at 81. As we previously noted, the right to confront witnesses is such a substantial right. *Bean*, 137 Ill. 2d at 81. In *People v. Caruth*, 322 Ill. App. 3d 226, 229 (2001), a Third District panel held that, in "proceedings implicating the ultimate decision of guilt or innocence, a defendant's appearance solely by closed circuit television may be considered plain error, regardless of the strength of the State's evidence." A complete absence without

a proper waiver is a far more serious deprivation than a presence solely by video link. What occurred here was not only plain error, it was *plainly* plain error.

¶ 23                                         III. CONCLUSION

¶ 24       For the reasons stated, we reverse defendant's convictions and remand the matter for a proper determination of defendant's guilt or lack thereof.

¶ 25       Reversed and remanded.